Argued September 29, affirmed October 13, rehearing denied December 15, 1914.

## STATE *v*. LEONARD.*

(144 Pac. 113; 144 Pac. 681.)

**Indictment and Information—Duplicity—False Pretenses.**

1. Under Section 1964, L. O. L., making it an offense for any person, by false pretenses, to obtain, or attempt to obtain, with intent to defraud, the signature of any person to any writing, the false making whereof would be forgery, and Section 1552 providing that in all cases the defendant may be found guilty of any crime necessarily included in that charged or of an attempt to commit such crime, an indictment charging that by false pretenses defendant obtained, and attempted to obtain, the signature of a person to a writing does not charge two separate offenses.

> [As to crime of obtaining property by false pretenses, see notes in 40 Am. Rep. 75; 21 Am. St. Rep. 265; 25 Am. St. Rep. 378; Ann. Cas. 1913B, 92.]

**False Pretenses—Evidence—Sufficiency.**

2. In a prosecution for false pretenses, evidence *held* to show that representations by the defendant as to the value of land covered by a mortgage, transferred to the complaining witness, were false, that defendant knew them to be false when he made them, that he made them with intent to defraud the complaining witness and his wife, and to obtain their signatures to a deed, that they believed the representations and acted on them, and were influenced by them and by an assignment of the mortgage to execute the deed.

**False Pretenses—Evidence—Admissibility.**

3. Under Section 1541, L. O. L., providing that, upon a trial for having, by false pretenses, obtained the signature of any person to an instrument, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing, but such pretense, or some note or memorandum thereof, must be in writing, where the false pretense is expressed orally and is accompanied

---

*On the question whether deed signed under false impression induced by fraud as to its contents or character is a forgery, see note in 36 L. R. A. (N. S.) 540.                    REPORTER.

by a false token or writing, it is not necessary that there be any note or memorandum thereof in writing.

**False Pretenses—Elements of Offense—"Token"—"False Token."**

4. A token is a mark or sign, a material evidence of a fact, and cheating by "false tokens" implies the use of fabricated or deceitfully contrived material objects to assist the person's own fraud and falsehood in accomplishing the cheating, and a false writing may be a false token.

**False Pretenses—Elements of Offense—"False."**

5. Where defendant conveyed his land, which was practically worthless, and took from the grantee a mortgage for $4,500, with the purpose of applying the mortgage on the purchase of other land, the mortgage was a false writing, "false" being defined in law as designedly untrue and deceitful, and implying an intention to perpetrate some treachery or fraud.

**False Pretenses—Elements of Offense—Nature of Representations.**

6. A false pretense, to constitute a crime, must relate either to past or present facts, and representations or promises as to things to be done in the future by the promisor are not false pretenses, within the Criminal Code.

**False Pretenses—Elements of Offense—False Writing.**

7. An assignment by defendant of a mortgage for $4,500 on property which was practically worthless, which mortgage was taken for the purpose of applying it on the purchase of other land, was a false writing, though not a forgery, and was admissible in evidence in a prosecution for procuring a deed on the consideration for which the mortgage was applied.

**Criminal Law—Appeal—Extent of Review—Denial of New Trial.**

8. An order denying new trial, not being appealable, cannot be reviewed on appeal.

**Criminal Law—Trial—Instructions—Duty of Jury.**

9. In a prosecution for obtaining by false pretenses the execution of a deed, the court, in response to a question by the jury, properly instructed that the jury should not take into consideration any civil remedy that the complaining witness might have against the defendant.

**Criminal Law—Appeal—Disposition of Cause—Technical Errors.**

10. Under Section 1626, L. O. L., requiring the court on appeal in criminal actions to give judgment without regard to questions in the discretion of the trial court, or technical errors, defects or exceptions which did not affect the substantial rights of the parties, a judgment can be reversed only for error prejudicial to the defendant.

## ON REHEARING.

**False Pretenses—Signature to "Writing"—Deed of Conveyance.**

11. A deed of conveyance is a "writing" within Section 1964, L. O. L., making it an offense by any false pretense to obtain the signature to any writing, the false making whereof would be punishable as forgery.

Forgery—Elements of Offense—Uttering Instrument.

12. Uttering a fabricated instrument is not necessary to constitute the crime of forgery.

Forgery—Deed—Necessity of Delivery.

13. It is not necessary to the crime of forgery of a deed of conveyance that the deed be delivered.

False Pretenses—Procuring Signature to Deed—Necessity of Delivery of Deed.

14. Under Section 1964, L. O. L., making it an offense by any false pretense to obtain the signature to a writing the false making whereof would be punishable as forgery, the crime of procuring the signature to a deed of conveyance may be made out without showing that the deed was delivered.

False Pretenses—Procuring Signature to Deed—Evidence—Intent.

15. Though, under Section 1964, L. O. L., making it an offense by any false pretense to obtain the signature to a writing the false making whereof would be punishable as forgery, it is not necessary to show that the writing, if it be a deed, was delivered, the delivery may be shown to prove fraudulent intent, but the intent may be shown by other facts.

Deeds—Delivery—Question for Jury.

16. The question of delivery of a deed is always a question of fact for the jury where there is a conflict in the evidence.

False Pretenses—Procuring Signature to Deed—Question for Jury.

17. In a prosecution for procuring the signature to a deed by false pretenses under Section 1964, L. O. L., evidence *held* sufficient to take the question of delivery of the deed to the jury.

From Multnomah: JOHN P. KAVANAUGH, Judge.

The defendant, T. J. Leonard, was indicted, tried and convicted of obtaining the signature of two persons to a deed of conveyance by false pretenses, and sentenced to imprisonment in the penitentiary for not less than one nor more than five years, and he appeals.　　　AFFIRMED.　REHEARING DENIED.

For appellant there was a brief over the names of *Mr. John P. Winter* and *Mr. Roscoe R. Johnson,* with an oral argument by *Mr. Winter.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. John A.*

*Collier,* Deputy District Attorney, and *Mr. Robert F. Maguire,* Deputy District Attorney, with an oral argument by *Mr. Maguire.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a criminal action for obtaining the signature of two persons to a deed of conveyance of real property by false pretenses, etc.

The following is a copy of the body of the indictment, to wit:

"T. J. Leonard is accused by the grand jury of the county of Multnomah and State of Oregon, by this indictment, of the crime of obtaining and attempting to obtain by false pretenses, with intent to defraud, the signature of a person and persons to an instrument and deed, the false making of which is and would be a forgery, committed as follows:

"The said T. J. Leonard on the second day of December, A. D. 1912, in the county of Multnomah and State of Oregon, then and there being, did then and there unlawfully, feloniously, and knowingly, with intent to injure and defraud, falsely and fraudulently pretend and represent to one M. J. Denny, his attorneys, agents and employees, that a certain tract of land situate and being in Skamania County, State of Washington, to wit, all of lot eleven (11) of section twelve (12), in township three (3), north of range seven and one-half (7½), east of the Willamette meridian, containing forty (40) acres, a more particular description of which said land is to this grand jury unknown, was then and there of the value of at least nine thousand ($9,000) dollars, and that said defendant had theretofore sold and conveyed said lands to one C. O'Donovan for the sum of nine thousand ($9,000) dollars, and that said C. O'Donovan had paid to said defendant forty-five hundred ($4,500) dollars as part of the purchase price for said land, and that a certain promissory note, purporting to be

signed and executed by said C. O'Donovan to and in
favor of the said defendant in the sum of forty-five
hundred ($4,500) dollars, with interest, a more par-
ticular description of which said note is to this grand
jury unknown, was the balance due and owing by said
C. O'Donovan to said defendant on account of the
purchase price of said land, and that a certain mort-
gage, a more particular description of which is to this
grand jury unknown, had theretofore been executed
and delivered by said C. O'Donovan to and in favor of
said defendant, as and for security for the payment
of said promissory note, and that a certain assignment
of said mortgage and note, a more particular descrip-
tion of which is to the grand jury unknown, then and
there executed and delivered by said defendant to said
M. J. Denny, his attorneys, agents and employees, was
a real, actual and *bona fide* assignment and transfer
of a real, actual and *bona fide* promissory note and
mortgage for forty-five hundred ($4,500) dollars, due
and owing by said C. O'Donovan to said defendant,
and that he, the said defendant, was then and there
the lawful owner and holder of said note and mort-
gage and indebtedness, and that there was then and
there due upon said note and mortgage the sum of
forty-five hundred ($4,500) dollars, with interest
thereon from the second day of November, 1912. All
of which said pretenses and representations, made
as aforesaid, were false and fraudulent, and the said
defendant then and there well knew them to be false
and fraudulent.

"Whereas in truth and in fact, as said defendant
then and there well knew, the said lands in Skamania
County, State of Washington, were not and are not
of the value of at least nine thousand ($9,000) dollars,
but were and are of the value of not more than one
thousand ($1,000) dollars, and the said defendant had
not theretofore or at all sold or conveyed the said
lands to said C. O'Donovan for the sum of nine thou-
sand ($9,000) dollars, and the said C. O'Donovan had
not paid said defendant the sum of forty-five hundred
($4,500) dollars, or any sum whatever, as part pay-

ment for said lands, and the said pretended promissory note for forty-five hundred ($4,500) dollars was not for a balance due and owing by said C. O'Donovan to said defendant on the purchase price of said lands, but said promissory note was caused by said defendant to be executed by said C. O'Donovan, with the intent and purpose of him, the said defendant, of deceiving, defrauding and obtaining and attempting to obtain the signature of the said M. J. Denny and —— Denny, his wife, to a certain instrument and deed of conveyance to certain lands in Clackamas County, State of Oregon, hereinafter more fully described, and the said C. O'Donovan did not own the said lands and did not owe the said defendant the sum of forty-five hundred ($4,500) dollars, or any sum whatever, upon said lands, and that said pretended mortgage had not been theretofore executed and delivered by said C. O'Donovan to said defendant as and for security of the payment of said pretended promissory note, but said defendant had caused said C. O'Donovan to execute said pretended mortgage with the intent of him, the said defendant, to deceive, defraud and to obtain and to attempt to obtain the signatures of the said M. J. Denny and —— Denny, his wife, to a certain instrument and deed of conveyance to certain lands in Clackamas County, State of Oregon, hereinafter more fully described; that said pretended assignment of said note and mortgage was not a true, real, actual and *bona fide* assignment of a real, actual and *bona fide* note and mortgage, but said pretended assignment was executed and caused to be executed by said defendant with the intent and purpose on his part to deceive and defraud and to obtain and attempt to obtain the signatures of the said M. J. Denny and —— Denny, his wife, to a certain instrument and deed of conveyance to certain lands in Clackamas County, State of Oregon, hereinafter more particularly described; and that there was not then and there due and owing upon said mortgage and note the sum of forty-five hundred ($4,500) dollars, or any other sum or amount whatsoever from the said C. O'Donovan

to the said defendant, and the said defendant was
not then and there the lawful owner of said mortgage
and note and indebtedness, or any other note, mort-
gage or indebtedness due and owing from said C.
O'Donovan to said defendant by reason of any sale,
trade or other transaction relating to said Skamania
County, Washington, lands, and there was not then
and there due and owing upon said note and mortgage
the sum of forty-five hundred ($4,500) dollars, with
interest from November 2, 1912, or any sum or amount
whatsoever, all of which facts were then and there
well known to said defendant, but the said false and
fraudulent representations and pretenses made and
caused to be made by the said defendant to said M. J.
Denny, his attorneys, agents and employees, and the
said fraudulent, false, fictitious and collusive note,
mortgage, assignment and deed so executed and caused
to be executed, as aforesaid, were made and caused
to be made by the said defendant for the sole purpose
of injuring, defrauding, and deceiving and of obtain-
ing and attempting to obtain from said M. J. Denny
and —— Denny the signatures of them, and each of
them, to a certain instrument and deed of conveyance
to certain lands in Clackamas County, State of Oregon,
hereinafter more fully described, and the said M. J.
Denny and —— Denny, his wife, relying upon and
believing to be true the said false and fraudulent
representations and false tokens so made as aforesaid,
were induced thereby to sign, execute and caused to
be signed and executed and delivered to said defend-
ant a certain instrument and deed of conveyance to the
following described lands in Clackamas County, State
of Oregon: Beginning at a cedar post fifteen (15)
inches in diameter, which is located twenty-three (23)
feet five (5) inches east of an iron pipe driven in the
ground in the north line of section 34, township 1
south, range 2 east of the Willamette meridian, in
Clackamas County, Oregon, and which said gate post
is the dividing line between the northeast quarter and
the northwest quarter of said section 34; thence south
on the said dividing line between said quarter section

80 rods to the point of beginning; thence south 80 rods to iron pipe, which marks the southwest corner of the northeast quarter of said section; thence east 80 rods to the division line between the east and west half of said northeast quarter of said section; thence north 160 rods to the north line of said section to an iron pipe, which marks the division line between the east and west half of said northeast quarter; thence west 40 rods following the north boundary line of said section to an iron pipe; thence south 80 rods to an iron pipe; thence west 40 rods to the division line between the northeast and northwest quarters of said section to the place of beginning, containing 60 acres of land, more or less—a more particular description of said lands and of said instrument and deed of conveyance being to the grand jury unknown, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.''

We have set out this prolix indictment because there is a demurrer thereto. The defendant demurred to it for the following reasons:

(1) ''That the said indictment in this cause does not substantially conform to the requirements of Chapter 7 of the Criminal Code of the State of Oregon in this: That said indictment does not clearly or distinctly describe the false token and pretenses and false representations alleged to have been used and made by the defendant, and does not sufficiently describe the alleged deed or instrument to which it is alleged the defendant attempted to and did obtain the signatures of said M. J. Denny and —— Denny.''

(2) ''That more than one crime is charged in said indictment.''

(3) ''That the facts stated in said indictment do not constitute a crime.''

(4) ''That said indictment contains matter which, if true, would constitute a legal justification and excuse of the crime charged and other legal bar to the action.''

The said demurrer was overruled by the court. The defendant then entered a plea of not guilty. At the close of the evidence for the state, the defendant moved the court to direct an acquittal of the defendant for the alleged reason that there was not sufficient evidence to warrant a verdict of guilty. This motion was denied. A verdict of guilty was returned by the jury, and sentence was pronounced, as stated *supra.* A motion for a new trial was denied. The appellant complains of the rulings of the trial court in overruling the demurrer, in admitting certain testimony offered by the state, in excluding testimony offered by the defendant, in denying the defendant's motion for an acquittal, in giving certain instructions to the jury, in refusing to give certain instructions requested by the defendant, in denying the defendant's motion to set aside the judgment and grant a new trial, on the ground of misconduct of the jury.

1. The appellant contends that the indictment charges more than one crime. The indictment is based on Section 1964, L. O. L., which is as follows:

"If any person shall, by any false pretenses or by any privy or false token, and with intent to defraud, obtain, or attempt to obtain from any other person, any money or property whatever, or shall obtain or attempt to obtain with the like intent the signature of any person to any writing the false making whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than five years."

The appellant contends that this section creates two separate crimes. He argues that obtaining the signature in the forbidden manner is one crime, and attempting to obtain it in that manner, is a separate and distinct offense, and that to unite the two in one

count is duplicity. The charge that a person committed a certain crime necessarily includes the charge that he attempted to commit it.

It is impossible to commit a crime without doing everything that constitutes an indictable attempt. When a person attempts to commit a crime, but fails to complete it, he may be properly indicted for the attempt only. Where a person is indicted for the commission of a crime, and the evidence shows that he attempted to commit it, but failed to complete the offense, he may be properly convicted of the attempt only.

Section 1552, L. O. L., is as follows:

"In all cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that which he is charged in the indictment, or of an attempt to commit such crime."

The law of 1876 (Laws 1876, p. 39), prohibiting gambling, made it a crime for anyone to "deal, play or carry on * * any game of faro," etc.

The indictment in *State* v. *Carr*, 6 Or. 134, was based on that statute, and it alleged *inter alia* that the defendant "did willfully and unlawfully deal, play and carry on a game of faro," etc. It was contended in that case that the indictment charged more than one crime, but the court held otherwise, saying, among other things:

"When the statute makes it a crime to do this or that, mentioning several things disjunctively, the indictment may, as a general rule, embrace the whole in a single count, but it must use the conjunction 'and' where 'or' occurs in the statute, else it will be defective for uncertainty."

In *State* v. *Bergman*, 6 Or. 341, the indictment was based on a section of the statute which made it a crime

for any person to willfully and wrongfully "commit any act which grossly injures the person or property of another, *or* which grossly disturbs the public peace or health, *or* which openly outrages the public decency and is injurious to public morals."

The indictment charged the defendant in that case with keeping a slaughter-house in the City of Astoria, and alleged that the act complained of "grossly injures the person and property of another," *and* "grossly disturbs the public peace," *and* "openly outrages the public decency," etc. It was contended that said indictment charged more than one crime; but the court held that it did not, and followed the ruling in *State* v. *Carr,* 6 Or. 134.

In *State* v. *Dale,* 8 Or. 229, the indictment charged that the defendant, having, in his hands as tax collector of Yamhill County, $3,000 of taxes belonging to said county, "did then and there fraudulently and feloniously take, steal, make away with, embezzle and convert to his * * own use the said $3,000, and then and there neglect to pay over * * to said Yamhill County said $3,000, or any part thereof," etc. It was asserted in that case that the indictment charged more than one crime; but the court held that it did not. The syllabus of the court in that case is in part:

"Where the statute makes the commission of different acts a crime, and uses the word 'or' connecting these acts, an indictment is good which charges the defendant with the commission of more than one of such acts, using the conjunction 'and' to connect them in the indictment."

In *Cranor* v. *Albany,* 43 Or. 147 (71 Pac. 1043), the court says:

"It is next urged that the information or complaint filed in the recorder's court against the plaintiff charges more than one crime, as it alleges that he did

'sell, give away, and dispose' of spirituous liquor, etc. The ordinance makes it an offense for any person, duly licensed to engage in the sale of spirituous liquors within the city, to sell, give away, or in any manner dispose of, on the first day of the week, commonly called Sunday, any spirituous, * * malt or vinous liquors. Under the doctrine of *State* v. *Carr*, 6 Or. 133, and subsequent decisions, * * it is competent for the prosecution, where the statute makes it a crime to do either of several things stated disjunctively, to embrace the whole in a single count, using the conjunction 'and' where 'or' occurs in the statute, and hence the information is not open to the objection urged.''

22 Cyc., page 386, says:

''In the case of crimes in the commission of which assault is involved, both the assault and the completed crime may be charged. There are some instances in which two crimes are of the same nature and so connected that, when both are committed, they must constitute but one legal offense, in which case both may be charged in the same count.''

In *State* v. *White,* 48 Or. 416 (87 Pac. 137) the syllabus in part is:

''Under the rule established in this state that an information may conjunctively charge acts disjunctively enumerated in a statute, an information charging that the defendant forcibly seized, confined, inveigled and kidnaped another is sufficient, under Section 1774, B. & C. Comp., subjecting to punishment every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent to send him out of the state against his will. All the acts charged may be committed in a single kidnaping, since no one is repugnant to any of the others.''

See, also, *State* v. *Bilyeu,* 64 Or. 180 (129 Pac. 768).

As shown *supra,* the rule has been announced in many cases in this state, in the last 38 years, that,

where a statute states the acts necessary to constitute an offense disjunctively, the indictment may charge all the acts enumerated in the statute conjunctively without being double. This rule may be subject to exceptions; but we find nothing in this case that makes it improper to follow the general rule just stated. The appellant states his position on this point thus:

"The indictment in this case charges the defendant with the crime of obtaining and attempting to obtain, by false pretenses, the signature of a person to a deed, and therefore charges the defendant with two separate crimes."

We submit, however, that obtaining and attempting to obtain a signature are not separate crimes. We hold that the indictment is not double, and that the demurrer thereto was properly overruled.

2. The material facts which the evidence tends strongly to prove, briefly stated, are as follows: Dr. M. J. Denny owned 60 acres of land near Portland, that was worth about $14,000. It was encumbered with a mortgage for $7,000. Denny was in debt and needed money to meet his obligations. He was desirous of selling this land in order to obtain funds to pay his debts. O. M. Smith was approached by Dr. Denny and his agents, with a view of selling to him said land. At that time Mr. Smith had two mortgages, one for $4,500 and another for $2,500, which he appeared to be willing to exchange for real estate, and negotiations occurred between him and Dr. Denny looking to such an exchange. Dr. Denny offered to make said exchange, but, owing to some delay, Mr. Smith had disposed of his said $4,500 mortgage to another person, and hence said exchange could not be made. The defendant and Mr. Smith boarded at the same hotel. The defendant, hearing from Mr. Smith of the nego-

tiations between the latter and Dr. Denny, informed Mr. Smith that he would like to get into the "deal." Smith informed him that he could do so, if he could substitute something for the $4,500 mortgage. The defendant told Mr. Smith that he had securities that he would put in in the place of the $4,500 mortgage, that Smith had disposed of. Smith told the defendant to make his arrangements, and that he would let the defendant into the "deal," if it was satisfactory to Dr. Denny. Smith and the defendant went and examined the Denny land, and they were satisfied therewith. At this time the defendant did not have the mortgage for $4,500 that he soon thereafter assigned to Dr. Denny; but he owned 40 acres of mountain land lying five miles north of Stevenson, in Skamania County, in the State of Washington. A man named C. O'Donovan was in and about the defendant's office frequently. The defendant informed him of the then pending "deal" with Dr. Denny for the 60-acre tract of land, and he told O'Donovan that he wanted to deed to him the 40-acre tract in the State of Washington, referred to *supra,* and wanted O'Donovan to execute to him a $4,500 note and a mortgage on said land to secure its payment, so that the defendant could use said note and mortgage in the "deal" for Dr. Denny's land. O'Donovan objected to doing so, but the defendant told him that he would incur no liability at all on the note or mortgage, and that all that the holder of the note and mortgage could do would be to take the land. O'Donovan yielded, and the defendant made to him a deed for the 40-acre tract and had it recorded, and O'Donovan executed to the defendant said note and a mortgage on said mountain land for said $4,500. This was all done for the express purpose of placing in the defendant's hands a note and mortgage for

$4,500, to be by him transferred to Dr. Denny as a part of the purchase price of the Denny tract, and for no other purpose. It was a sham and fraudulent transaction. O'Donovan did not want said land, and the whole transaction was fraudulent and done as a part of the scheme to obtain from Dr. Denny and his wife their signatures to the deed for the 60-acre tract of land. This mortgage was executed on or about December 2, 1912, but falsely dated November 2, 1912. It contains the following false statement: "This mortgage is part of the purchase price of the above described property." There was no purchase price to be paid for said property, and O'Donovan never paid or promised to pay anything therefor.

When the exchange of property was made, the mortgage for $4,500, last above referred to, was assigned by the defendant to Dr. Denny as $4,500 of the price to be paid him for his 60-acre tract of land.

Dr. Denny and wife, when they made the deed for the 60-acre tract of land, left the names of the grantees blank, with the understanding that the defendant and Mr. Smith should write therein the names of such grantees as they should desire, and they wrote therein the names of the defendant and the Traders' Trust Company as grantees. Said deed was made December 2, 1912, and at the time that it was made the defendant assigned to Dr. Denny the said fraudulent mortgage for $4,500, referred to *supra,* and the note referred to therein, and Mr. Smith assigned to Dr. Denny a mortgage and note for $2,500, and the grantees of said 60-acre tract assumed the payment of the $7,000 mortgage on said premises. The consideration stated in the deed was $15,000.

In order to prevail upon Dr. Denny and his wife to sign said deed of conveyance referred to, the defend-

73 Or.—30

ant exhibited and delivered to Dr. Denny, when said fraudulent representations were made, an assignment of said note and mortgage to Dr. Denny, subscribed by the defendant. Said assignment states that said mortgage bears date of November 2, 1912, and that it was executed by C. O'Donovan to the defendant, to secure the payment of the sum of $4,500, together with the promissory note therein described, and the money due or to grow due thereon. The defendant was named in said assignment as the party of the first part, and Dr. M. J. Denny as party of the second part. Said assignment contained *inter alia* the following provision:

"And the party of the first part [the defendant] does hereby covenant to and with the said party of the second part [Dr. Denny] that the said party of the first part is the lawful owner and holder of the said note and mortgage, and that he has a good right to sell, transfer and assign the same as aforesaid, and that there is now due and owing upon said note and mortgage four thousand five hundred ($4,500) dollars, with interest from the 2d day of November, A. D. one thousand nine hundred and twelve."

This assignment was subscribed and sealed by the defendant, attested by two witnesses, and acknowledged before a notary public in proper form. Both the mortgage and the certificate of acknowledgment are dated November 2, 1912; but said instrument was not made until about December 2, 1912. The date was false. While the proposition for the exchange of Dr. Denny's land for mortgages was pending, and when said assignment of mortgage was presented to Dr. Denny for consideration, the defendant, for the purpose of inducing Dr. Denny and his wife to sign the deed for said 60-acre tract, orally and falsely repre-

sented to Dr. Denny and his agents that he had recently sold the 40-acre tract of land in Skamania County, Washington, and described in said $4,500 mortgage, for $9,000, and that it was worth that sum; that the person to whom he had so sold said land had paid him $4,500 on the purchase price thereof, and that said mortgage for $4,500, mentioned in the said assignment, was executed for the remainder of said purchase price of the tract so sold; that said 40-acre tract covered by said mortgage was a beautiful tract of land; and that it had improvements thereon, consisting of a house and a barn and an orchard, and that he had just sold said land.

The evidence shows that the 40-acre tract described in said mortgage is located five miles north of Stevenson, Washington, in the mountains, and that the nearest road is about a mile and a half from it. A packhorse can get through to said land, but a wagon cannot. It once had timber on it, but the timber was destroyed by fire several years before said mortgage was made. There is no house, barn, orchard or other improvements thereon. During the winter season, snow falls thereon to a depth of from five to six feet. The land is about 2,200 feet above sea level, and it is very rocky, and it is called "scab" land.

The evidence shows that the land is practically valueless, or worth not to exceed $1.25 per acre: The evidence shows that said representations were false and fraudulent, and that the defendant knew them to be false and fraudulent when he made them, and that he made them with the intent to defraud Dr. Denny and his wife and to obtain their signatures to said deed. The evidence tends to show that Dr. Denny and his wife believed said representations to be true, and acted on them and signed said deed. The evidence

tends to show that Dr. Denny and his wife were influenced by said false representations and by said assignment of mortgage to sign and execute said deed, and that said deed was delivered to the defendant and Mr. Smith. We find that the evidence tends strongly to prove the allegations of fraud contained in the indictment.

3. Section 1541, L. O. L., relates to the evidence necessary to establish a charge of obtaining the signature of a person to a written instrument by false pretenses, and is as follows:

"Upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument * * no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing; but such pretense, or some note or memorandum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant," etc.

It will be observed that Section 1964, *supra,* does not require the false pretenses to be evidenced by any writing; but Section 1541, *supra,* contains certain provisions as to the kind of evidence necessary to support an indictment for that crime. Where the false pretense is expressed orally and is accompanied by a false token or writing, it is not necessary that there be any note or memorandum thereof in writing, either subscribed by the defendant or in his handwriting.

Where, however, the false pretense is expressed orally and is not accompanied by a false token or writing, there must be some note or memorandum thereof in writing either subscribed by or in the handwriting of the defendant. This court in *State* v. *Whiteaker,* 64 Or. 302 (129 Pac. 536), construed said Section 1541 thus:

"There are two ways in which the crime defined by Section 1954, L. O. L., may be accomplished: By false pretense, or by privy or false token. Section 1541 distinguishes the evidence essential in establishing each: If the false pretenses are expressed orally, they must be accompanied by a false token or writing; if not accompanied by a false token or writing, then the false pretense, or some note or memorandum thereof, must be in writing, signed by or in the handwriting of defendant. The meaning of Section 1541, L. O. L., is not rendered obscure or doubtful by the latter clause. That clause cannot be held to refer to a false pretense expressed orally and accompanied by a false token or writing."

In *People* v. *Gates,* 13 Wend. (N. Y.) 320, the court says:

"Writing, as used in the statute [concerning false pretenses], must mean some instrument, or at least letter—something in writing, purporting to be the act of another, or certainly of some person; but the paper presented in this case does not answer any such description. It was no writing at all, because it did not purport to be the act of any person. Writing, as used in the statute, cannot mean anything written upon paper, not purporting to be of any force or efficacy; but some instrument in writing, or written paper, purporting to have been signed by some person; and such writing must be false."

If a false pretense is expressed orally, it is sufficient to support an indictment under Section 1541, L. O. L., if it is accompanied by a false token or writing. It is not always easy to determine what constitutes "a false token or writing," as that phrase is used in our statute.

12 Am. & Eng. Ency. Law (2 ed.), 809, says:

"Equally as at common law, the use of a false token was essential to constitute a cheat of a private nature, under the statute (33 Hen. VIII, c. 1) providing punishment for obtaining property by cheats effected

by privy tokens. What was such symbol or token was sometimes difficult to determine, but it was settled that it should be something real and visible, as distinguished from mere words, as a ring, a key or a writing, and even a writing would not suffice, unless it was in the name of another, and of such a character as to afford more credit than the mere assertion of the party defrauding. In order to constitute the offense, there must be a false pretense or representation of an existing or past fact.''

4. A token is a mark or sign; a material evidence of a fact. Cheating by ''false tokens'' implies the use of fabricated or deceitfully contrived material objects to assist the person's own fraud and falsehood in accomplishing the cheat: Black's Law Dictionary (2 ed.), p. 1159.

Under Section 1541, L. O. L., where the false pretense is expressed orally, and no note or memorandum thereof is in writing subscribed by the defendant or in his handwriting, it must be accompanied by ''a false token or writing.'' As is stated in the authorities, a false writing may be a false token. This certainly is true under said section. But the writing, to constitute a false token, must be false. This does not mean that the writing must be a forgery.

5. In his Law Dictionary (2 ed.), page 480, Mr. Black defines ''false'' thus:

''Untrue; erroneous; deceitful; contrived or calculated to deceive and injure. * * In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.''

The mortgage made by O'Donovan to the defendant for $4,500 upon the 40-acre tract of land in Skamania County, Washington, was a false writing within the foregoing definition. The defendant knew the land to

be practically worthless, and he deeded it to O'Donovan, and had O'Donovan execute to him the note for $4,500 and the mortgage upon said land, to create a pretended security to be assigned to Dr. Denny to pay $4,500 of the purchase price of the latter's land. It was a sham and a fraud from beginning to end, and said pretended security was practically worthless. Said land was not worth enough to pay the expense of a suit to foreclose said mortgage and sell said land.

During the negotiations leading up to the making of the deed in question, and just before the deed was signed by Dr. Denny and his wife, the defendant executed an assignment of said mortgage to Dr. Denny. It was subscribed by the defendant and by two witnesses and sealed, and it had attached thereto a certificate of a notary public showing that the defendant had acknowledged the execution thereof. That document had been executed with all the usual formalities. It was presented and delivered to Dr. Denny by the defendant for the purpose of transferring to him said mortgage and the note described therein. It recites that it was executed in consideration of the payment to the defendant by Dr. Denny of the sum of $4,500. It describes the note and mortgage for $4,500 that it purports to assign to Dr. Denny. Near the end of the instrument, it contains the following false provision:

"And the said party of the first part [the defendant] does hereby covenant to and with the said party of the second part [M. J. Denny] that the said party of the first part is the lawful owner and holder of the said note and mortgage, and that he has a good right to sell, transfer and assign the same as aforesaid, and that there is now due and owing upon said note and mortgage four thousand five hundred ($4,500) dollars, with interest," etc.

Black, in his Law Dictionary (2 ed.), page 481, defines false pretenses thus:

"False representations and statements, made with a fraudulent design to obtain money, goods, etc. A representation of some fact or circumstance, calculated to mislead, which is not true. * * A pretense is the holding out or offering to others of something false or feigned," etc.

6. The rule is elementary that a false pretense, to constitute a crime, must relate either to past or present facts, and that representations or promises as to things to be done in the future by the party making them are not false pretenses, within the Criminal Code: *In re Snyder,* 17 Kan. 542; *State* v. *Tull,* 42 Mo. App. 324; *Allen* v. *State,* 16 Tex. App. 150.

7. Referring to the said assignment of mortgage, counsel for the appellant says:

"Besides being genuine and not false, the state's evidence shows affirmatively and positively that no reliance was placed on the assignment of the $4,500 mortgage (State's Exhibit 'A'), and therefore the court erred in admitting in evidence said exhibit."

We cannot agree with counsel for the appellant as to said assignment. While it was not a forgery, we hold that it was false, within the meaning of the statute relating to false pretenses and false tokens or writings. The term "false," in law, signifies, as shown *supra,* "something designedly untrue and deceitful, and implies an intention to prepetrate some treachery or fraud." The mortgage and note that it purports to assign were executed for the express purpose of being transferred to Dr. Denny for $4,500, and the defendant knew that it had no real value. He represented that the land had been "just sold" by him for $9,000, and that it was worth that, when he knew

that it was practically valueless.    He represented that there were a house, a barn and an orchard on the land; but the evidence shows that there were no improvements whatever on it.    He represented that it was a pretty piece of land; but the evidence shows that it is "scab" land and mostly rock.    He represented that the person to whom he had "just sold" it had paid him $4,500 of the purchase price thereof.    The person to whom he referred testified that he had not paid him anything for said land.    The defendant knew said mortgage to be a sham and a fraud, and, when he made said assignment, he did it with the intent to defraud Denny and his wife.    We cannot agree with appellant's counsel that said assignment was not false. It was a false token and writing, and it accompanied the making of the false pretenses.    The evidence tends to show that it was relied on by Dr. Denny and his agents.    They read and considered it before the deed was executed.    A person purchasing a $4,500 mortgage would be likely to place some reliance on the assignment.

The covenants in the assignment that the defendant is the lawful owner and holder of said note and mortgage, that he has a good right to sell, transfer and assign the same, and that there is now due and owing to the defendant on said note and mortgage $4,500 are shown by the evidence to be false.    The defendant was not the lawful owner of said fraudulent mortgage, under the facts shown by the evidence, and he did not have a good right to convey it to Dr. Denny, and really nothing was due or owing to him upon it.    The note and mortgage were vitiated by fraud.    The covenants referred to facts then existing and not to things to be done in the future.    To make a solemn covenant that certain facts are true is equivalent to representing or

pretending that they are true. We hold that said assignment was a false token or writing, and that it accompanied the false pretenses orally made, and that there was sufficient evidence to require the case to be submitted to the jury and to support the verdict found. The motion for an instructed verdict was properly denied.

8. The appellant filed a motion for a new trial, and the trial court overruled it. It is a well-settled rule of practice in this state, in criminal as well as civil cases, that an order of a trial court denying a motion for a new trial is not an appealable order. Hence we cannot review the action of the court below in overruling said motion.

9. There are some other points mentioned in the brief; but we do not deem it necessary to discuss them at any length. After the jury retired to consider the verdict that should be rendered, they returned into court and asked for instructions as to whether they should take into consideration the civil remedy that Dr. Denny may have against the defendant for the damages done him by the defendant's fraud, etc. The court properly instructed them that they should not.

The defendant's ability or inability to respond in damages for the injury done by the fraud neither exonerated him from conviction nor mitigated his guilt to any extent. Those matters had no relevancy to the issue to be determined.

10. We have read the instructions given and think that they, as a whole, submitted the case to the jury as favorably for the defendant as the law relating to the matters in issue would permit, and we do not think that there was any error in rulings upon the evidence that was prejudicial to the defendant. A judgment

can be reversed only for error that was prejudicial to the appellant.

Section 1626, L. O. L., governs the action of the court on appeals in criminal actions. It is as follows:

"After hearing the appeal the court must give judgment, without regard to the decision of questions which were in the discretion of the court below, or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

We find no reversible error in the record, and the judgment of the court below is affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE MOORE concur.

---

Denied December 15, 1914.

## ON PETITION FOR REHEARING.

(144 Pac. 681.)

For appellant there was a brief with oral arguments by *Mr. Guy C. H. Corliss, Mr. John P. Winter* and *Mr. M. J. Barrett.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. John A. Collier,* Deputy District Attorney, and *Mr. Robert F. Maguire,* Deputy District Attorney, with an oral argument by *Mr. Maguire.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant was indicted for the crime of obtaining and attempting to obtain, by false pretenses, with

intent to defraud, the signatures of two persons to a deed, the false making of which is and would be forgery. The indictment is based on Section 1964, L. O. L., which is as follows: .

"If any person shall, by any false pretenses or by any privy or false token, and with intent to defraud, obtain, or attempt to obtain from any other person, any money or property whatever, or shall. obtain or attempt to obtain with the like intent, the signature of any person to any writing the false making whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than five years."

The defendant was convicted of the crime for which he was indicted as stated *supra,* and this conviction was affirmed by this court on October 13, 1914. The instrument to which he obtained the two signatures was a deed of conveyance of land, and the signatures so obtained were those of M. J. Denny and his wife. He now asks for a rehearing mainly on two grounds. He contends: First, that he could not be guilty of the crime charged, unless the said deed was delivered; and, secondly, that the evidence of delivery of said deed was insufficient to warrant the jury in finding that there was a delivery thereof.

11. We will consider, first, the contention that the delivery of the deed to which he obtained the signatures is necessary to constitute the crime charged. The crime of which the defendant was convicted is closely related to forgery. The writing to which the signature is obtained must be one "the false making of which would be punishable as forgery." A deed of conveyance is such a writing. If an instrument that is forged is void on its face, its fabrication is not a

crime. It is sufficient, however, if, on its face, it is apparently legal.

In Volume 2 of his work on Criminal Law (11 ed.), Section 885, Dr. Wharton says:

"To sustain an indictment for forgery it is generally necessary that the instrument alleged to be forged should be one which would expose a particular person to legal process. Apparent legal efficiency, however, is enough. It is not necessary that such suit should have in it the elements of ultimate legal success. It is enough if the forged instrument be apparently sufficient to support a legal claim," etc.

12. In this case the deed was in due form, signed and sealed by the grantors, attested by two witnesses, and properly acknowledged before a notary public and certified. On its face it was a complete and valid deed of conveyance. If the defendant had forged the names of the grantors to said deed with fraudulent intent, he would have been guilty of the crime of forgery, because the deed was, upon its face, a complete and valid instrument. Uttering a fabricated instrument is not necessary to constitute the crime of forgery.

In Section 858, Volume 2 (11 ed.), Wharton's Criminal Law, the author says:

"Forgery is making a false suable document with intent to defraud. The offense is consummated by the making of a false document, on which suit might be brought, with intent to defraud, without any uttering."

In 13 Am. & Eng. Ency. Law (2 ed.), page 1085, it is said:

"As the offense (forgery) consists in the mere intention, it is not necessary that anyone should have been actually injured or defrauded by the forged writing. It is enough that it may probably or possibly

be done. No uttering is necessary to constitute the offense.''

In 2 Russell, Crimes (9 ed.), page 709, the author says:

''In the first place, however, it should be observed that the offense of forgery may be complete, though there be no publication or uttering of the forged instrument. For the very making with a fraudulent intention, and without lawful authority, of any instrument which, at common law or by statute, is the subject of forgery is of itself a sufficient completion of the offense before publication; and though the publication of the instrument be the medium by which the intent is usually made manifest, yet it may be proved as plainly by other evidence. Thus in a case where the note which the prisoner was charged with having forged was never published, but was found in his possession at the time he was apprehended, no objection was taken to the conviction, on the ground of the note never having been published; there being in the case circumstances sufficient to warrant the jury in finding a fraudulent intention.''

In *State* v. *Fisher*, 65 Mo. 437, 438, the defendant was indicted for forging a deed of conveyance, and, on appeal, the court quoted the forging passage from Russell on Crimes, and said, *inter alia:*

''It is the felonious making of the false instrument as true in fact which constitutes the crime of forgery; consequently it was not necessary for the indictment to aver that the instrument would have conveyed the land if genuine. 'The question is whether, upon its face, it will have the effect to defraud those who may act upon it as genuine, or the person whose name is forged.' ''

In *Keeler* v. *State,* 15 Tex. App. 111, the syllabus is in part:

"In order to constitute forgery, and to sustain a conviction therefor, it is not necessary that the forged instrument shall have been passed in fact, and goods or· money obtained upon the same."

In *Commonwealth* v. *Ladd,* 15 Mass. 526, 527, the court says:

"The objection to the indictment is that it contains no averment that the paper alleged to be forged was presented or delivered to anyone, as a true or genuine acquittance or discharge for goods delivered in consideration thereof. This is not necessary at the common law, or under our statute. The false making, with intent to defraud, is the gist of the offense."

In *King* v. *Crocker,* 2 Leach's Crown Cases, 987, a part of the syllabus is:

"A person may be convicted of forging with intent to defraud, although the note was found in his custody when apprehended, and never in fact uttered by him."

13. We conclude that, when a person is charged with the crime of forging a deed of conveyance, it is not necessary to prove that the deed was delivered. As stated by Mr. Russell, *supra:*

"The very making with a fraudulent intention, and without lawful authority of any instrument which, at common law or by statute, is the subject of forgery is of itself a sufficient completion of the offense before publication."

14, 15. The defendant is charged with the crime of obtaining the signatures of M. J. Denny and his wife to a deed of conveyance, by false pretenses, with the intent to defraud, etc.

Section 1964, L. O. L., makes it a crime for a person, by false pretenses, and with intent to defraud, to obtain the signature of a person to any writing the false making of which is punishable as forgery. We have

seen *supra* that the false making of a deed of convey-
ance that appears on its face to be complete and valid
is punishable as forgery, if made with fraudulent in-
tent, although it may not have been delivered or used
in any way. This being so, it necessarily follows that
to obtain the signature to a deed of conveyance, by
false pretenses, and with the intent to defraud, con-
stitutes the crime of which the defendant was con-
victed, although said deed of conveyance may not have
been delivered. The crime of forging a deed is com-
plete when the instrument is fabricated with the
intent to defraud, and delivery of the deed is not a
necessary ingredient of that crime, as the uttering of
a forged note or bill is no part of the crime of forging
a note or bill. So the obtaining of signatures to a
deed of conveyance by false pretenses, and with the
intent to defraud, is consummated as soon as the sig-
natures are so obtained, and a delivery of the deed is
not a necessary element of said crime.

It is true that a deed of conveyance is not effective
to convey title without delivery, express or implied.
It is true, also, that a note or a bill is not effective as
a binding contract until delivery. Yet it is the settled
rule that delivery or the uttering of a note or a bill
is not a necessary element in the crime of forgery, and
that that crime is complete when the bill or the note
is fabricated with the fraudulent intent, although it
may not have passed from the possession of the
forger. If, after a person has obtained the signature
of another to a deed of conveyance, by false pretenses,
and with an intent to defraud, something happens that
prevents a delivery of the instrument, this does not
purge the acts of the person who thus obtained such
signature of their criminality. The crime was fully
consummated when he thus obtained the signature.

We conclude that the delivery of the deed was not a necessary element in the crime charged in the indictment. While under the terms of our statute delivery of the writing to which the signature of a person has been obtained by false pretenses and fraud is not essential to complete the crime, it may be shown as evidence of the fraudulent intent; but the intent may be shown by other facts. Statutes of other states may be so worded as to make delivery of the writing a necessary element of the crime.

The evidence shows that M. J. Denny and his wife executed the deed, and that it was properly witnessed, acknowledged and certified, and that they permitted the defendant and O. M. Smith to have inserted therein, as the grantees in said instrument, the names of the defendant and the Traders' Trust Company. Mr. Smith was interested in said company, and he had it made a grantee instead of himself.

It appears on page 215 of the evidence that a juror said to O. M. Smith, when he was on the stand, the following: "I have lost track of what became of the deed, when it was left at your office." To this the witness Mr. Smith answered: "It was given over to Mr. Leonard. Mr. Leonard came to my office, or he was in my office when they left, and he took the deed." Another juror asked this witness: "At whose request was the deed recorded?" The witness answered: "Well, the deed never was recorded. When they found out this trouble, I told Mr. Leonard to get the deed back, and he telephoned to Oregon City and got it back before it was recorded." This witness, speaking further of this deed, says: "Well, I knew it (the deed) would be sent for record, of course; naturally supposed it would be." On the back of this deed, which is the State's Exhibit "D," there is the following indorsement:

"Return when recorded to T. J. Leonard, 921 Board of Trade Building, Portland, Oregon."

Shortly after said deed was made, M. J. Denny and wife instituted a civil action or suit against the defendant concerning the said transaction and the execution of said deed, and the defendant herein, in that action or suit, filed an answer which he signed and swore to. The following portion of said answer was put in evidence in this case:

"That said plaintiffs (Denny and wife) examined said notes and mortgages and expressed themselves as satisfied to make said exchange; that on or about the 2d day of December, 1912, the plaintiffs (Denny and wife) made, executed, and delivered to this defendant (Leonard) and to the Traders' Trust Company, a corporation, a deed to said land (meaning the deed and the land referred to in the indictment); that said deed has never been recorded."

It is not necessary to refer to any further evidence as to the delivery of said deed. We are limited to determining whether there was sufficient evidence to authorize the trial court to submit the case to the jury, or to sustain the finding of the jury. The evidence shows beyond doubt that, after the deed was properly executed, attested, acknowledged and certified, it was left by Denny and wife in the office of O. M. Smith; that Smith was associated with the defendant in purchasing the land of Denny; that the defendant took the deed and sent it to Oregon City to have it recorded; that trouble arose almost immediately about the transaction, and O. M. Smith told the defendant to get the deed back; and that the defendant telephoned to Oregon City and got it back. Shortly thereafter, in answering in the action or suit referred to *supra,* Leonard's answer expressly alleged that said deed was made, executed and delivered by Denny and wife to

him and the Traders' Trust Company.   Mr. Leonard signed said answer and swore to it.   The facts stated *supra* tending to prove the delivery of said deed are strong.

16. The question of delivery is always a question of fact for the jury where there is any conflict in the evidence in relation thereto.

In 1 Devlin, Deeds (3 ed.), Section 262, the author says:

"A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance.   Whether such intent actually existed is a question of fact to be determined by the circumstances of the case, and cannot in a majority of instances be declared as a matter of law."

In *Pierson* v. *Fisher*, 48 Or. 223 (85 Pac. 621), the syllabus in part is:

"The possession of an executed deed by the grantee named therein creates a presumption of its regular delivery, and one asserting the contrary has the burden of proving such claim.   Delivery of a deed is accomplished when the grantor voluntarily passes it to the grantee, or someone for him, or when the grantor does or says something that discloses unmistakably an intent to finally part with all control over the instrument."

In *Fain* v. *Smith*, 14 Or. 82, 84 (12 Pac. 365, 367, 58 Am. Rep. 281), the court says:

"It is not necessary there should be an actual handing over of the instrument to constitute a delivery.   A deed may be delivered by doing something and saying nothing, or by saying something and doing nothing, or it may be by both."

In *Flint* v. *Phipps*, 16 Or. 437, 447 (19 Pac. 543, 549), the court says:

"Before proceeding further with an examination of the evidence on the question of delivery, it may be proper to advert to the legal presumption which arises in all cases where a deed properly executed and acknowledged is found in the possession of the grantee. In such case it will be presumed that such deed was delivered by the grantor and accepted by the grantee, in the absence of proof to the contrary."

It was held in *Pierson* v. *Fisher,* 48 Or. 223 (85 Pac. 621), and *Flint* v. *Phipps,* 16 Or. 437, 447 (19 Pac. 543, 549), that the possession by the grantee of a deed of conveyance properly subscribed, witnessed, acknowledged and certified raises a disputable presumption that the deed has been duly delivered to the grantee. There is evidence referred to *supra* showing that the defendant had the possession of said deed, and that it was sent to Oregon City to be recorded, but that, owing to the fact that trouble had arisen concerning it, Smith, the agent of the Traders' Trust Company, told the defendant to get it back, and that the defendant telephoned to Oregon City, and had it returned. Why did the defendant have possession of it and send it to Oregon City to have it recorded, if it had not been delivered to him? Why did he say in his answer, signed and sworn to by him, as stated *supra,* that said deed was delivered to him and the Traders' Trust Company, unless it had been so delivered?

17. We find that there was sufficient evidence of the delivery of said deed and on the material points of the case to justify its submission to the jury and to support the verdict that the jury returned.

The petition for a rehearing is denied.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.