Argued October 17, affirmed December 9, 1924, rehearing denied January 2, 1925.

## ALICE H. ELLIS *v.* LILY HARTMUS.

(231 Pac. 149.)

**Mortgages—Sister Who Paid Amount of Mortgage Indebtedness Due on Brother's Land Could Foreclose Mortgage Only if She Purchased Mortgage and Did not Pay Note.**

1. Sister who paid amount of mortgage due on brother's land could foreclose mortgage, if mortgage was purchased by and was assigned to her, but not if she merely paid the note and extinguished the mortgage.

**Mortgages—Sister Suing to Foreclose Mortgage on Brother's Land had Burden of Proving That She Purchased Mortgage and Did not Merely Pay Note.**

2. Where sister paid amount of mortgage indebtedness due on brother's land, and thereafter brought suit to foreclose the mortgage, she had burden of proving that she purchased the mortgage, and did not merely pay the note and extinguish the mortgage.

---

1. See 19 R. C. L. 352, 440, 520.

Mortgages—Stranger to Note and Mortgage, Who Paid Amount to Holder Did not Purchase It, Unless There was Contract to That Effect.

3. Sister who paid amount of note secured by mortgage on brother's land to holder, and who was stranger to the note and mortgage, did not purchase the note and mortgage, unless there was a contract to that effect; the relations between the sister and the brother being irrelevant.

Mortgages—Evidence Held to Prove Payment, and not Purchase, of Note Secured by Mortgage.

4. In sister's suit to foreclose mortgage on brother's land, involving issue as to whether sister, in payment to holder of amount of note, had paid the note and extinguished the mortgage, or had purchased the note and mortgage, satisfaction of mortgage delivered to brother, who acted as her agent on her payment of amount of note, produced by her counsel at the trial, and supported by other evidence, *held* to prove that the sister paid the note, and did not purchase it.

Mortgages—Execution of Contract of Indorsement Includes Delivery.

5. The execution of a contract of indorsement of mortgage note includes delivery, under Section 777, Or. L.

Mortgages—Delivery is More Than Physical Transfer of Possession, and is Question of Fact Dependent on Intention of Parties.

6. Delivery is more than the physical transfer of possession, but depends upon the intention of the parties, and is a question of fact.

See (1, 3) 27 **Cyc.** 1297 (1926 Anno.). (2, 4) 27 **Cyc.** 1291 (1926 Anno.). (5, 6) 8 **C. J.** 346; 27 **Cyc.** 1285.

From Washington: George R. Bagley, Judge.

Department 2.

Affirmed. Rehearing Denied.

For appellant there was a brief and oral argument by *Mr. George S. Shepherd.*

For respondent there was a brief and oral arguments by *Mr. D. C. Lewis* and *Mr. J. O. Bailey.*

PIPES, J.—This is a suit to foreclose a mortgage on certain real property situated in Washington County, Oregon. It appears that in July, 1908, John

6. See 19 **R. C. L.** 280.

Nellsen, unmarried, and Simon Nellsen and Minnie Nellsen, his wife, were the owners in fee simple of the property involved in this suit. While they were such owners, and on July 3, 1908, they executed to Joseph Nellsen, of Portland, Oregon, their joint and several promissory note for the sum of $3,000, payable to his order, with interest at the rate of 6 per cent per annum. At the same time and to secure the said note the makers executed and delivered to Joseph Nellsen the mortgage which the appellant seeks here to foreclose. It is alleged, further, that on the third day of July, 1912, Joseph Nellsen, the holder of the said note and mortgage, in consideration of the payment to him of $3,180, being the principal and interest to that date, set over and assigned the note and mortgage to the appellant by indorsement of the said note to her. It appears, also, from the complaint that Joseph Nellsen, by mistake and inadvertence, signed a release of the said mortgage on the twenty-fifth day of April, 1917, and that the mistake was discovered by Joseph Nellsen and he again executed an instrument, duly assigning the note and mortgage to plaintiff, and rescinded and revoked the apparent satisfaction of the mortgage previously made on the twenty-fifth day of April, 1917. It is charged that the note and mortgage have not been paid, except the sum of $320 paid by E. M. Hartmus in August, 1912, and the prayer is for the balance due, $2,680, and for a decree of foreclosure.

It appears without controversy that the Nellsens who owned the property at the time the mortgage was executed, on the twenty-second day of April, 1910, sold and conveyed the land described in the mortgage to George B. Hartmus, subject to the mortgage of $3,000, and that the said George B. Hartmus,

by the terms of the instrument, assumed to pay and discharge the mortgage. George B. Hartmus died on the twelfth day of April, 1911, leaving a will, which was duly filed for probate in the County Court of Multnomah County, Oregon. By the terms of the will the testator gave and bequeathed to Alice Hartmus Ellis, his daughter and the appellant here, and to Edwin Milton Hartmus and William Eugene Hartmus, sons, each the sum of $100, and then devised and bequeathed all of the rest and residue of his estate to the appellant, including the real property described in the mortgage.

About the twenty-second day of December, 1911, the appellant conveyed by warranty deed to her brother Edwin Milton Hartmus and to Lily Hartmus, his wife, respondent, all of the said property. It appears from the deed in evidence that the grantees in the said deed assumed to pay the said mortgage. The appellant offered herself as a witness in the cause and called in her behalf Joseph Nellsen, the mortgagee. It is not disputed that on about the third day of July, 1912, when the note and mortgage became due, or a few days afterwards, the appellant here paid to Joseph Nellsen, the mortgagee, the sum of $3,180. Whether that payment was made as the purchase price of the mortgage, or whether it was a payment of the note and mortgage is the question here. The appellant relates what occurred between her and Joseph Nellsen, the mortgagee, at the time the payment was made. She testified that her brother, William Eugene Hartmus, was present during the negotiations; that he was assisting her in the transaction, and that she relied upon him to see that the proper papers were executed. Her statement of the circumstances is substantially all disclosed in the following testimony:

"Q. What was your understanding on payment of this money?

"Mr. Lewis: Object to the form of the question. Tell what was done, not what the understanding was.

"A. Mr. Nellsen came to the store; I was employed by Olds, Wortman & King, and I went out in the hall, and he said, 'I am Mr. Nellsen'; and he said, 'I came for my money.' I don't just remember the date the mortgage called for or the interest; and he said he came for his money, and I said, 'Is your money due now on that place?' And he said, 'Yes, it is.' I believe he said, 'It is due today.' I don't remember; but, at any rate, he came at that time for the money, and I said, 'Will you extend the mortgage?' And he said, 'No, I want my money. I would rather have my money.' And I said, 'Well, we haven't the money, we are not ready to pay the money, but I will see what can be done'; because I did not wish a foreclosure of the mortgage. He said he wanted his money and I didn't want a foreclosure of the mortgage to take place, because the place was of far more value than the mortgage, of course; so I made an appointment with him to come again, and send me word, and my brother, who was at that time working in the Oregonian office, and I made a date with him, and Mr. Hartmus and Mr. Nellsen came back to the store; and I had got most of the money to take up the mortgage, being as Mr. Nellsen would not extend the time upon the place and he wanted his money. He said he wouldn't extend the time on the mortgage. * *

"Court: At the time you paid this money just tell what took place at that time.

"A. What took place? The money was paid and the note was signed and transferred to me. The money was paid, because he didn't wish to extend the time. I had paid the interest up to that time. I was in no condition to pay it—

"Court: Tell the conversation if you had any, at the time you actually paid the money.

"A. I don't recollect there was very much conversation, excepting that he asked for the money.

113 Or.—11

There was no conversation that I remember. I did not wish the mortgage foreclosed—

"Mr. Bailey: It doesn't make any difference what he wished.

"A. No; I don't remember any conversation, excepting I made a date for him to come there and I would get him the money and take over the mortgage to save a foreclosure on the place.

"Mr. Bailey: You didn't tell him so?

"A. I told him I would take the mortgage.

"Q. Take the mortgage?

"A. Yes, sir; that I would take it over; or it would be foreclosed, because he wanted the money and there was no other way to get it that I knew of. * *

"Q. Were you present at the time this note was executed and handed over to you?

"A. Yes, sir.

"Q. And at the same time this paper was executed and handed over to you? (Indicating.)

"A. I believe my brother had the deed and all of the papers, excepting that note; my memory is not clear as to that. I remember about the note clearly, but as to this I don't remember about it. I presume it was all fixed up properly. * *

"Q. Who was present at the time this money was paid over to Mr. Nellsen? State what date.

"A. Mr. Eugene Hartmus and myself.

"Q. Mr. Eugene Hartmus is your brother?

"A. Yes, sir.

"Q. This is Mr. Hartmus sitting here? (Indicating.)

"A. Yes, sir. * *

"Q. Do you know whether that satisfaction of the mortgage was made on the date the money was turned over?

"A. The note was signed on the day it was paid over.

"Q. Don't you know that that satisfaction of the mortgage was made on the date the money was turned over?

"A. I presume it was, because my brother was there attending to it and he would probably fix it all right; that he saw that it was. * *

"Q. And wasn't the satisfaction of the mortgage also turned over to him at that time?

"A. It probably was. I don't remember about that. He had the papers belonging to my other brother; he was taking care of those papers. * *

"Q. Now, you spoke about your brother, of telling your brother that you had satisfied—Mr. Nellsen— what did you mean by that?

"A. I had the business arrangement so the mortgage could not be foreclosed; that I had bought the mortgage. I think I have made that plain several times. He came and asked for his money."

Mr. Joseph Nellsen, on behalf of appellant, testified on cross-examination:

"Q. When you were giving that release you told Mrs. Hartmus or Mr. Hayes that you had previously executed a release and received your pay for the note?

"A. That was the first release; yes, sir.

"Q. You told them that?

"A. Yes, sir.

"Q. And you had given them the money to have it recorded?

"A. I don't know how much, but at any rate it was a little to get it recorded.

"Mr. Shepherd: Whom did you give it to?

"A. To Mr. Hartmus.

"Q. That was the first release?

"A. That was the release at the time I received the money. * *

"Mr. Shepherd: Did Mrs. Ellis state to you anything about her object in taking this note over?

"Mr. Bailey: He can testify to what was said.

"Q. What was said?

"A. She didn't say nothing about buying the note, or anything like that, that I can remember of. She didn't say it, but she told me she was paying this money for her brother; that he was up in the mines

and she was advancing this money for her brother, and she was expecting that she would get it back after a while. That is the way she. spoke to me. But she didn't say anything to me that she wanted to buy the note, or anything of the kind:

"Q. Who spoke to you about buying?

"Mr. Lewis: He has not said anything.

"A. I don't remember at all. I have got to say that I don't remember. That is too long ago. I don't remember."

The defendant offered in evidence an instrument in writing which is marked Exhibit "A." It was produced in court at the trial by appellant's counsel and was received in evidence without objection. It purports to be a satisfaction of the mortgage. It is signed by Joseph Nellsen, under his seal, attested by two witnesses, and acknowledged before a notary public. It certifies and declares that the mortgage of the date of July 3, 1908, made and executed by John Nellsen, Simon Nellsen and Minnie Nellsen, his wife, to Joseph Nellsen, and recorded in the records of Washington County, Oregon, in book 54 of mortgages, at page 279, on the twenty-third day of July, 1908, together with the debt thereby secured, is fully paid, satisfied and discharged.

It is alleged in the answer of the defendant that Edwin Milton Hartmus had come from Idaho in 1912; that he was in bad health, and that the appellant, his sister, desired him to remain in Oregon, and in order to induce him to do so gave him the land in question and promised to pay the mortgage. This promise is denied by the appellant in her testimony, and, the defendant having offered no evidence to contradict, that defense may be laid aside.

The court below dismissed the suit, from which judgment the plaintiff appeals.

1, 2. If the mortgage in question was purchased by appellant and assigned to her, it is a subsisting obli-

gation, to which she has good title, and it can be foreclosed in this suit. If she did not purchase the mortgage, but paid the note and extinguished the mortgage, she has no mortgage to foreclose and the court below did not err in dismissing her suit. The burden is upon her to prove that she purchased the mortgage: *Sturgis* v. *Baker,* 43 Or. 236 (72 Pac. 744).

3. The appellant was a stranger to the note and mortgage, and was under no obligation to the mortgagee to pay the note or extinguish the mortgage. In such case, to constitute a purchase of the instrument, it must appear that there was a contract to that effect between the stranger and the holder of the paper. That is the sole criterion, and the relations between the stranger and the mortgagor have no relevancy to the question to be decided: 8 C. J. 588, 589, 590; *Sturgis* v. *Baker, supra; Marshall* v. *Meyers,* 96 Mo. App. 643 (70 S. W. 927); *Johnston* v. *Schnabaum,* 86 Ark. 82 (109 S. W. 1163, 15 Ann. Cas. 876, 17 L. R. A. (N. S.) 838); *Charnock* v. *Jones,* 22 S. D. 132 (115 N. W. 1072, 16 L. R. A. (N. S.) 233); *Henderson* v. *Shaffer,* 110 La. 481 (34 South. 644); *Lee* v. *Field,* 9 N. M. 435 (54 Pac. 873); *Riddle* v. *Russell,* 117 Iowa, 533 (91 N. W. 810); *Binford* v. *Adams,* 104 Ind. 41 (3 N. E. 753).

4. At the time that the appellant paid the money to Joseph Nellsen he delivered to her, or for her to her brother, by her authority, the satisfaction of the mortgage described in the foregoing statement. It is argued in the brief that her testimony shows that she did not see the instrument at the time it was delivered. But that is unimportant. She admits in her testimony that it was probably delivered to her brother. Moreover, she must have become possessed of it, because it was produced by her counsel at the

trial and it was admitted in evidence without objection.

Under these circumstances, we must hold that, as a part of the transaction between herself and the mortgagee, she not only received, but accepted, the satisfaction. It is a part of the *res gestae.* The effect of this is to acknowledge payment of the note and to extinguish the mortgage.

The oral testimony of the appellant herself, and the oral testimony of the mortgagee testifying in her behalf, do not weaken, but strengthen, the probative force of this satisfaction. She nowhere testifies that the mortgagee offered to sell her the mortgage. She said that he came for his money. He refused to extend the mortgage at her request, and she promised to get the money and pay the note and mortgage; and she kept her promise. This evidence, recited more fully in the statement, negatives, rather than supports, the contract on which she must rely, between her and the mortgagee, on his part to sell and on her part to buy the note and mortgage. It is consistent with the fact that the parties intended that the money received by the mortgagee was to be a payment of the note and a satisfaction of the mortgage. Add to that the testimony of the mortgagee that appellant did not mention to him the question of purchasing the note and mortgage, and the question is not left in doubt.

5. Appellant's counsel puts his main reliance upon the single circumstance that at the time of the transaction, according to appellant's testimony, Joseph Nellsen "signed" the note, evidently meaning that he indorsed his name on the back of it, and delivered to her the note and mortgage. The surrender of the note and mortgage was the natural and proper consequence, if they were paid and satisfied. Under

appellant's theory a contract of indorsement would be created between the appellant· and the mortgagee. The execution of such a contract includes delivery. Section 777, Or. L., is as follows:

"The execution of a writing is the subscribing and delivering it, with or without affixing a seal."

6. To execute the contract referred to required that it should be delivered. Delivery is more than the physical transfer of possession. It depends upon the intention of the parties, and is always a question of fact: *Archambeau* v. *Edmunson,* 87 Or. 476, 482 (171 Pac. 186); *State* v. *Leonard,* 73 Or. 451, 483 (144 Pac. 113, 681); *Fain* v. *Smith,* 14 Or. 82, 85 (12 Pac. 365, 58 Am. Rep. 281, note).

.In view of the delivery and acceptance of the release, we cannot infer any intention upon the part of the mortgagee to assume the obligations of an indorser to the appellant, or any intention to sell and deliver the mortgage, which at the same time, both parties concurring, was formally and solemnly satisfied.

The appellant, in her brief, insists that she did not intend the payment of this mortgage to be a gift to her brother, and that a gift, to be valid, must be delivered. But that question is not in this case. Whether the appellant made the payment gratuitously for the benefit of her brother, or made it upon his request, or upon other consideration moving from him to her, are questions not relevant to the inquiry whether she bought or paid the note and mortgage. As we have seen, whether the transaction was a purchase or payment depends upon whether there was a contract having that effect between the mortgagee and the appellant, and not at all upon any legal relations that might exist between her and her brother.

In conclusion counsel contends that the burden is upon the defendant to prove payment of the note and mortgage. That is not the defense. It is plaintiff's burden to prove that she purchased this mortgage, instead of paying it, and that it was assigned to her. The burden is upon her, not upon the defendant, on that issue.

The decree of the court below is affirmed.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.