## PEYREFITTE v. UNION HOMESTEAD ASS'N.*
### No. 16983.

Court of Appeal of Louisiana. Orleans.
Jan. 23, 1939.

*Rehearing denied Feb. 27, 1939.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellant.

Carroll, McCall, Plough and Carroll, of New Orleans, for appellee Union Homestead Ass'n.

Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellee Whitney Nat. Bank of New Orleans.

Marcus & Corkern & Flanders and F. A. Kullman, all of New Orleans, for appellee Interstate Bank & Trust Co.

Dufour, St. Paul, Levy & Miceli and Rene J. Waguespack, all of New Orleans, for appellee Hibernia Bank & Trust Co.

Marcus & Corkern & Flanders and F. A. Kullman, all of New Orleans, for appellee Morris Plan Bank.

Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellee L. Feibleman & Co.

E. Howard McCaleb, Sr., of New Orleans, for appellee New Hotel Monteleone.

Joseph Rosenberg, of New Orleans, for appellee Joseph R. Hurwitz.

WESTERFIELD, Judge.

On November 3rd, 1934, Felix M. Peyrefitte brought this suit against the Union Homestead Association claiming $1,160.76, plus dividends, alleging that he had that amount on deposit to his credit as of August 23rd, 1926, and that no authorized withdrawals had been made by or through him. The defendant Homestead Association answered, admitting that on August 23rd, 1926, it had to plaintiff's credit the amount claimed, but averred that during the years 1927, 1928 and 1929, twenty-three withdrawals were made by defendant, completely exhausting all credits due him and that in each instance it had issued its check, drawn on the American Bank & Trust Company or the Whitney National Bank of New Orleans, defendant's depositaries, to plaintiff's order and that the checks so issued had been charged against defendant's account with the two banks and that if the plaintiff's endorsement appearing on the reverse of the checks be not genuine and plaintiff's claim against it be enforcible, that the said banks are liable to it and it called the banks in warranty. Defendant further plead estoppel and ratification.

The Whitney National Bank interposed special defenses not necessary to mention at this time and called in warranty L. Feibleman & Company, Inc., the New Hotel Monteleone, the Liquidators of the Morris Plan Bank, the Liquidators of the Hibernia Bank & Trust Company and the Liquidators of the Interstate Trust & Banking Company as guarantors of prior endorsements on the several checks. The New Hotel Monteleone then called in warranty Joseph L. Hurwitz, a prior endorser, for whom it had cashed one of the checks.

Exceptions of no cause of action urged on behalf of the Liquidators of the Interstate Bank, the Morris Plan Bank and the Hibernia Bank were maintained. From this judgment the Whitney National Bank, which had called these banks in warranty, has appealed.

There was judgment dismissing plaintiff's suit and he has appealed. The Union Homestead, the American Bank & Trust Company, the Whitney National Bank and the New Hotel Monteleone appealed in order to protect themselves in the event of a possible reversal of the judgment and to preserve their rights as against their respective warrantors.

There is little dispute as to the facts. Mrs. Peyrefitte, beginning in January, 1927, when she withdrew $50, gradually depleted plaintiff's account with the defendant homestead by March 25, 1929, when the final sum remaining to his credit $48.40, was withdrawn. She presented to the homestead, from time to time, written orders purporting to have been signed by her husband, of which the following is an example:

"New Orleans, La.
"June 8/28

"Dear Sir

"Please let my wife have Fifty Dollars
"Oblige

"F. M. Peyrefitte."

The homestead would draw its check for the amount mentioned in the order payable to plaintiff. The plaintiff's wife would then endorse her husband's name on the back of the check and cash it, for the most part at L. Feibleman & Company, at which time she would pay a part of it on an account due by her or her husband. In other instances, the checks would be cashed by J. Hurwitz of Hurwitz-Mintz, furniture dealers, where she also had an account. On December 8th, 1931, plaintiff went to the office of the Homestead for the purpose of withdrawing some money and was informed that he had no money to his credit. He had been to the Homestead in October and November,

1931, for the same purpose and was, on those occasions, told he could not obtain any money without his passbook, which he did not have. It appears that, in the meantime, the passbook was found in the possession of the Homestead. In January, 1932, plaintiff consulted with Mr. Percy C. Moise, a member of the Louisiana Bar who has since died. On January 14, 1932, Mr. Moise wrote the following letter to the defendant:—

"Union Homestead Association,
 "City.
"Gentlemen:—

"My client, Mr. F. M. Peyrefitte, has placed in my hands a claim against you for $1160.76, plus dividends accruing since August 23rd, 1926, at 6% per year.

"Mr. Peyrefitte states that he had a deposit with you and that you now claim his deposit has been withdrawn. He has never withdrawn this deposit himself, nor has he authorized anyone else to do it. You are not empowered to pay his deposit to anyone else, and under the circumstances you still owe him this money.

"I would thank you to let me hear from you at once about the matter because if his claim is not recognized I shall be forced to take legal action. I would rather settle this matter amicably if possible."

The Homestead through its attorneys, Messrs. Carroll, McCall, Plough & Carroll, denied liability. On January 19, 1932, Mr. Moise acknowledged receipt, on the day previous, of counsel's letter denying liability and stated that his client had instructed him to drop the matter, as appears by the following:

"Carroll, McCall, Plough & Carroll,
 "Attorneys at law,
 "City.
"Gentlemen:—

"I have your letter of January 18th, with reference to the claim which Mr. F. M. Peyrefitte has against the Union Homestead Association. My client has instructed me not to take any further action in this matter."

Plaintiff made no further effort to prosecute his claim and remained silent until March, 1934, when, through Mr. Harold Moore, his attorney, he again made demand upon the homestead association which repeated its denial of liability. Nothing more was heard from him until November 8th, 1934, when this suit was filed. Meanwhile, in August, 1934, the homestead threatened foreclosure proceedings on a mortgage which it held on certain real estate belonging to Peyrefitte in the sum of $475. Under date of August 20th, 1934, Mr. Moore wrote the homestead calling their attention to the alleged credit to plaintiff's account which was much larger than the amount due upon the mortgage and suggesting that a part of this credit be applied to the liquidation of the mortgage, but when the foreclosure suit was filed one year later on August 28th, 1935, no defense was made and the property was adjudicated to the homestead.

The defendant homestead association relies upon its plea of estoppel and ratification which is largely based upon the Moise letter, wherein Mr. Moise acting for the plaintiff wrote that "my client has instructed me not to take any further action in this matter". It is pointed out that if Peyrefitte knew nothing of his wife's withdrawals at the time they were made, he certainly knew on December 8, 1931, when the homestead told him that his credit had been exhausted, and that it was not until three years later, November 1934, which was two years and ten months after giving notice of his intention to abandon the claim that suit was brought. Plaintiff, however, denies that he authorized Mr. Moise to abandon the claim, but admits that he received a copy of his letter to that effect shortly after it had been written, and that he made no attempt to repudiate it. We cannot accept his statement. Lawyers do not write such letters without authority from their clients, and, if we concede that Mr. Moise was an exception, no motive is shown or can be conjectured for such extraordinary conduct. Plaintiff admitted that a check for $200 not included in the twenty-three checks in controversy had been obtained by his wife upon a genuine order from him, directed to the homestead, and that she signed his name on the back of this check without authority, but he approved of her action in this instance and made no claim for the proceeds of that check. He also admitted that at least one of the twenty-three checks bore his genuine endorsement and waives his claim for the amount of that check. Plaintiff's claim was not prescribed when suit was filed and his counsel contends that no estoppel can result from inaction as long as prescription had not run. It is true that mere delay in the assertion of a claim will not

operate as an estoppel and that an estoppel by acquiescence must be affirmatively proven by the party who pleads it. Reed v. Eureka Homestead Society, La.App., 143 So. 891 and Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85.

In the Reed Case, upon which counsel confidently relies, the facts, as stated in the opinion, are as follows [page 892]:

"It appears that plaintiff, Miss Mattie Reed, and her father J. W. Reed, were both depositors with the defendant company. On the 13th day of May, 1919, her father caused the amount appearing to his credit, $978.35, to be transferred to his daughter's account, and entered to her credit on her pass book, his account being closed out. On the same day, Miss Mattie Reed executed a will leaving all of her possessions to her father, the will and the pass book being allowed to remain in the custody of the defendant. After the transfer of the father's credit to his daughter's account, she continued to make deposits from time to time, and occasional withdrawals. Concerning these deposits and withdrawals there is no question. The father, however, who was a retired boiler maker, 74 years of age when he made the transfer of his funds to his daughter in 1919, continued to draw upon his daughter's account, as though it was his own, up to the time of his death in 1927, at the age of 82. During this period he withdrew the sum of $1,761.46, in thirteen installments of different amounts. His daughter disclaims any knowledge whatever of these withdrawals, and denies all responsibility therefor.

"The record shows that Mr. Reed would go to the office of the homestead and would ask for such sum as he desired to withdraw; that the homestead would issue its check to the order of Miss Mattie Reed, whereupon Mr. Reed would indorse his daughter's name and his own name; that the homestead would then pay over to him the amount in cash. The checks were not indorsed by Miss Mattie Reed, and she is not shown to have had any knowledge of the transaction."

 Miss Reed, the plaintiff in that case, did not know that her father was withdrawing her money and did nothing whatever to indicate that she had ratified his action or which might be the basis of a plea of estoppel which was attempted to be established by inference and assumption such, for example, as the fact that she had,

from time to time, made deposits with her pass book which showed that a lesser amount was due than would be the case if no withdrawals had been made. That case resembles the instant case in that the checks given for the sums withdrawn were endorsed without the authority of the payee if we consider that Mrs. Peyrefitte had no color of authority from her husband, but the similarity ends there. Here, the plaintiff knew some three years before the suit was filed that his funds had been withdrawn and the record shows that he also knew that his wife had withdrawn them. He claims that his signature on the checks as well as on the orders was a forgery. His counsel calls it "a palpable forgery". We think the term is a harsh one to apply to the wife's actions, whether it be technically justified or not, for Mrs. Peyrefitte, we are convinced, was free from any criminal intent. Her testimony is very frank indeed. She says she believed that her husband knew what she was doing while she was doing it and that he subsequently approved and condoned her actions. While defendant is unable to prove that all or any definite amount of the funds were used to pay community debts, the record clearly shows that much of the money withdrawn from Peyrefitte's account was used for that purpose. Peyrefitte had been married for ten years and he had two children. Counsel argues, and we think with much plausibility, that whatever might have been Peyrefitte's original intention with respect to his claim, subsequent consideration and reflection led him to abandon it because of the effect upon the good name of his wife and indirectly his and her children. That is a logical explanation of the Moise letter. His delay of two years between the Moise letter and the Moore letter renewing his claim tends to corroborate this point of view. Mr. Pyrefitte separated from his wife on March 5th, 1932, about two months after the Moise letter, though no legal proceedings have been instituted. It was not until two and one half years later that this suit was filed. In the meanwhile, with commendable consideration for his wife and children, he continued to and, as far as we know, still supports his family. In his testimony he says that the cause of his separation was his wife's action in withdrawing his funds from the homestead. His wife denied this and offered to give her version of the separation. She was not permitted to do so because of an ob-

jection that it was irrelevant. Be that as it may, we are convinced that plaintiff had no intention of prosecuting this claim when the Moise letter was written and that he instructed Moise to so advise the homestead association. Counsel for the homestead attempt to show a course of conduct based upon the $200 check and the other check admittedly signed by plaintiff and much might be said for this contention, but we need not consider the point extensively since we are convinced that the plaintiff intended to ratify everything she did with respect to the withdrawals by instructing his counsel to abandon his claim and by his subsequent silence for more than two years. Plaintiff's counsel denies that these facts amount to an estoppel because they do not show that the homestead had been prejudiced thereby.

"To constitute an 'estoppel in pais' there must concur, an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements are wanting. They are each of equal importance." 21 Corpus Juris, 1119-1120.

Upon receiving the original notice of plaintiff's claim the Union Homestead immediately advised its warrantors, the American Bank & Trust Company and the Whitney National Bank, that it would hold them responsible for their endorsements of the checks which had cleared through them. Following the receipt of the Moise letter the homestead informed the banks that the plaintiff had dropped the claim. When the Whitney Bank called in warranty the Morris Plan Bank in Liquidation, the Interstate Trust & Banking Company in Liquidation and the Hibernia Bank & Trust Company in Liquidation, those institutions filed exceptions of no cause of action based upon Section 4 of Act No. 300 of 1910. The exceptions were maintained upon the ground that the claims were not made within the time which the State Examiner of State Banks, acting within the provisions of the Act of 1910, had established for the presentation of claims against the insolvent banks. The Whitney National Bank defends the call

in warranty by the Union Homestead upon the ground that the homestead having notified it that plaintiff's claim had been abandoned and that, consequently, no action would be taken on the banks' warranty, it is now estopped from asserting such claim to its prejudice. The further defense is made that at the time the original claim was made against the homestead and the notice of such claim given the banks, the Morris Plan Bank, the Interstate Bank and the Hibernia Bank were solvent. The defense of the insolvent banks presented by the liquidators was recognized as a valid one by the trial court in maintaining the exceptions of no cause of action and it is certain that the defense based upon the denial of the bank's claim against its warrantors, as urged against the homestead, is a very serious one and quite prejudicial to the homestead's defense as against plaintiff's claim.

"When a person has done or said something with intent to influence the dealings of another, and that other has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter." Curl v. Ruston State Bank, 104 La. 548, 29 So. 234.

"If by error or ignorance, one has done himself a prejudice which cannot be repaired without breaking in upon the right of another, the error cannot be corrected to the prejudice of the latter." Henderson v. Shaffer, 110 La. 481, 34 So. 644.

"A person, who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and to act accordingly, is estopped." Taylor Co. v. New York & C. Steamship Co., 159 La. 381, 105 So. 379, 380.

Our conclusion is that the plaintiff's claim should be dismissed. This result makes it unnecessary for us to consider the various defenses made by the warrantors.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

McCALEB, J., takes no part.