DORÉ, Judge.
This is a suit wherein plaintiff seeks to recover the sum of $422.80 paid by him to defendant allegedly through mistake. It is shown that plaintiff, a used car dealer, purchased a 1940 Ford 2-door Sedan from Plenry H. Chapman on February IS, 1949 for the price of $600 in cash and that the said Chapman gave , plaintiff a bill of sale to the effect that his title was clear and that there were no liens of .any kind against the car. Plaintiff then sold the Ford car to a third party and some months after this sale he was notified by the defendant, Universal C. I. T. Credit Corporation, that said defendant held and owned a Chattel Mortgage on the automobile on which there was due and owing a balance in the sum of $422.80, and said defendant demanded that plaintiff either tender the automobile to the defendant or pay the said sum of $422.80; that defendant, moreover, threatened to seize the automobile in the hands of the third party who had purchased it from plaintiff; that petitioner did, on or about October 8, 1949, pay said defendant the full sum of $422.80; that said payment was made by plaintiff under and by virtue of a mistake in fact and in law, in that petitioner, by the demands of the defendant, was led to believe that the Chattel Mortgage held by defendant had been duly and properly recorded in the chattel mortgage records and that petitioner was therefore personally liable to defendant and would be liable in warranty to- the third party purchaser if seizure were made; that, moreover, petitioner desired to protect his reputation as a reliable used car dealer; that petitioner discovered after making the payment that the said chattel mortgage was never recorded and that he is therefore entitled to receive back the said money mistakenly paid to defendant, and that defendant has no> legal or moral right to retain the same.
*515 It is admitted that the defendant did have a chattel mortgage executed by Chapman from whom plaintiff purchased the Ford car and that the balance due on the chattel mortgage was $422.80. It is further admitted by the defendant that payment of the $422.80 was made by the plaintiff on or about October 8, 1949, but that, in effect, this payment was made voluntarily by the plaintiff after he had refused to divulge the identity of the person to whom the car had 'been sold and that the payment was in the nature of a compromise and that as a result of said payment the defendant assigned all of its right, title and interest in and to said chattel mortgage to plaintiff; that in consequence of the compromise settlement made and entered into by and between plaintiff and respondent, respondent parted with all of its right, title, interest or equity in and to the aforesaid chattel mortgage note by reason of the assignment of same to plaintiff, and that, therefore, plaintiff has no recourse against respondent.
After hearing the case the trial judge, for written reasons assigned, came to the conclusion that the payment of $422.80 by plaintiff to the defendant was made by mistake and consequently rendered judgment in favor of plaintiff and against the defendant for said sum together with legal interest from judicial demand and all costs. The defendant has appealed.
The facts involved in the case are very simple. Chapman had purchased the Ford automobile from Capital City Ford Company, Inc., and had executed a promissory note secured by chattel mortgage on the automobile as part payment thereof. The note and chattel mortgage were thereafter assigned to the defendant, Universal C. I. T. Credit Corporation, but the chattel mortgage was never recorded. Thereafter, Chapman sold the car to plaintiff, Maxie Thomas, representing that it was free of any lien. At that time Thomas did not check the mortgage records, but contacted Chapman’s employer who informed him that Chapman was reliable. Maxie Thomas later sold the car to the 'third party. In the first part of October, 1949, Thomas was notified by representatives of Universal C. I. T. Credit Corporation that they held a chattel mortgage against the car and that there was a balance due on the note of $422.80. The representatives of the defendant company testified that the notice to Thomas was given on October 1, 1949 and further testified that the question as to whether or not the chattel mortgage had been recorded was not discussed; that they as representatives of the company felt that they had a right to proceed against the car wherever it was and that the plaintiff refused to divulge that fact or to do anything about it until he had a chance to consult his attorney. Plaintiff, on the other hand, testified that he did not receive any notice until Friday afternoon, October 7, 1949, and that at that time he was informed by a representative of the defendant company that the chattel mortgage was recorded; that on Saturday he consulted his attorney, who apparently informed him that unless the chattel mortgage note was paid the defendant had the right to seize the car and that consequently on Saturday afternoon he paid the chattel mortgage note and received an assignment thereof. He admits that neither he nor his attorney made any attempt to check the mortgage records to ascertain whether the chattel mortgage had been recorded. He states that his reasons for not doing so were that he had been informed or given to understand it was recorded and for the further reason that since he did not have notice until Friday afternoon and did not consult his attorney until Saturday afternoon, he was unable to check the records until the following Monday and was afraid that meanwhile the defendant would ascertain the whereabouts of the car through the license bureau and would seize it, thereby injuring his reputation as a used car dealer. Of course, if the testimony of the representatives of the Credit Corporation is correct he had a whole week within which to check the records. Be that as it may, it is obvious that both plaintiff and his attorney had the definite impression that the chattel mortgage had been recorded and that if they had known that it was not recorded, the payment would not have been made.
*516 Plaintiff based his suit on Articles 2301 and 2302 of the Civil Code and Article 18 of the Code of Practice, reading as follows :
C.C. Article 2301. “Obligation to make restitution. — He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.”
C.C. Article 2302, "Payor's right to reclaim thing.- — He who has paid through mistake, believing himself a . debtor, may reclaim what he has paid.”
C.P. Article 18. “Payment of sum not owed — Recovery—Conditions.—He who pays through error what he does not owe, has an action for the repetition (restitution) of what he has thus paid, unless there was a natural obligation to make such payment; but he must prove that he paid' through error, otherwise it shall be presumed that he intended to give.”
The defendant in his brief contends that the above quoted articles do not apply herein for the reason that the right, title and interest of the defendant to the chattel mortgage note were transferred to the plaintiff in consideration of his payment of $422.80. The defendant relies on Civil Code, Article 2310, which provides as follows: “He who, through mistake had paid the debt of another to whom he believed himself indebted, has a claim to restitution from the creditor.
“This right ceases, if, in consequence of the ,payment, the creditor has destroyed or parted with his title; but the recourse still remains to the person paying against the true debtor.”
The defendant also cites, in support of its contention, the cases of Henderson v. Shaffer, 110 La. 481, 34 So. 644, 648 and Kenner v. Leon Godchaux Co., 52 La.Ann. 965, 27 So. 542, wherein it is stated that: “If by an error or ignorance of the law one has done himself a prejudice which cannot be repaired without breaking in upon the right of another, the error shall not be corrected to the prejudice of the latter.”
It may be noted that in the case at bar a tender of the mortgage note was made to defendant at the trial and refused and it may be further noted that the mortgage debtor, Chapman, was 'a minor and that this was apparently well known to the defendant at the time of the assignment by it to plaintiff of the mortgage note. In other words it would appear that the creditor in consequence of the payment and the assignment did not destroy a part of his title for the reason that it was after-wards tendered to him, and moreover in view of the minority of the mortgage debtor and his definite refusal to pay the debt, the mortgage note was of no value and consequently plaintiff made a payment without consideration.
In his brief the defendant also urges the defense that if a person with full knowledge of the circumstances pays money voluntarily to another without fraud, compulsion or duress, such money cannot be recovered although no obligation of making such payment existed, citing the case of Ducros v. Missouri State Life Insurance Company, Orleans Appeal Digest, 142, see Louisiana Digest, Payment 82(1). This contention is clearly untenable, for the simple reason that had plaintiff had full knowledge of the existing circumstances he would not have made the payment.
The defendant also contends that the payment herein was made to avoid litigation and therefore cannot be rescinded, citing Article 1846 of the Civil Code, which provides in part as follows: Section 2: “A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law”.
This cannot apply to the case at bar for the reason that there could not possibly have been any litigation involving the plaintiff, for the reason that the chattel mortgage had not been- recorded and had no effect whatsoever on the plaintiff or his purchaser.
The only serious defense in this -case is to the effect that the defendant is not answerable for plaintiff’s ignorance of *517 fact, due to his own negligence and carelessness in failing to check the mortgage records to ascertain whether or not the chattel mortgage had been recorded. Various cases are cited by the defendant in support of this contention, principally the cases of Pennsylvania Casualty Co. v. Brooks, La.App., 24 So.2d 262 and Metropolitan Life Insurance Company v. Mundy, La.App., 167 So. 894, which cases the trial judge states added to the provisions of Civil Code, Article 2302, supra, that the party seeking to recover money paid through error must show that such payment was not the result of his sole negligence. In the two cases cited, the plaintiffs had in their actual possession information which if referred to would have disclosed that the money paid in error should not have been paid and in those cases the court denied recovery. In the instant case, the only information that the plaintiff had in his actual possession was that the defendant had a chattel mortgage against one Chapman from whom he had purchased a car. True, he could have checked the mortgage records, and thereby secured information which was not in his possession, but he readily explains his failure to do so by his statement that he had the definite impression from his contact with the defendant’s representatives that the chattel mortgage was recorded. These representatives either told plaintiff that it was recorded or else withheld the information from him. In either case they were in bad faith' and that bad faith was really the cause of the payment. We cannot see wherein the plaintiff was guilty of any inexcusable carelessness of negligence. Possibly, as stated by the trial judge, if he had been “ultra-cautious” he would have checked the mortgage records prior to payment even though the demand were made by defendant such as defendant herein who' ane would gen7 erally expect would not make demand on a note secured by mortgage unless said mortgage had been recorded. It is our opinion that the payment was clearly made by mistake and that the defendant was fully aware of the mistake when it received the payment. Moreover, by returning the payment and receiving the note back, the defendant is in no worse condition than it was at the time the payment was made.
For these reasons, the judgment appealed from is affirmed.